BLISH, MIZE AND SILLIMAN HARD-WARE COMPANY, a corporation of Kansas, and Parker Manufacturing Company, a corporation of Massachusetts, Appellants,

v.

TIME SAVER TOOLS, Inc., a corporation of Illinois; Bruce A. Mackey; and Davrus Corporation, a corporation, Appellees.

No. 5247.

United States Court of Appeals
Tenth Circuit.

Aug. 29, 1956.

Rehearing Denied Oct. 19, 1956.

Cedric W. Porter, Boston, Mass. (L. G. Miller, Boston, Mass., on the brief), for appellants.

Owen J. Ooms, Chicago, Ill. (Norman B. Sorter, Kansas City, Kan., on the brief), for appellees.

Before HUXMAN, MURRAH and PICKETT, Circuit Judges.

MURRAH, Circuit Judge.

This is an appeal from the District Court of Kansas, holding appellee's patent for a detachable drill bit valid and infringed by appellant's accused device. Appellants first plead noninfringement, then invalidity. But, following what has been said to be the better practice, Sinclair & Carroll Co., Inc., v. Interchemical Corp., 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644, we shall first consider the issue of validity.

The Patent (No. 2,681,673), issued to Mackey in June 1954, relates to an improvement in drill bit construction, and particularly to drill bits used for boring large holes in wood, plastics, aluminum or other similar materials. It contemplates the use of a drill shank, attachable to the chuck of a portable electric drill with a blade holder capable of interchangeably receiving the different sizes of the detachable drill bit.

Only Claim One is in suit. It discloses a flat rectangular shaped drill blade having front, side and back edges. A centrally located tapered lead point extends forward from the front edges. The front edges and a portion of the side edges are bent forward from the plane of the body of the blade in the direction of rotation to form continuously curved cutting edges. The back edge has means for attachment to the shank or holder.

The significant features of the bit are: (1) its interchangeable attachment to the drill shaft, permitting the economical use of multiple sized bits on the same shaft; and (2) forward bending and sharpening of the front and side edges to form curved cutting edges with a front and radial rake. Invention is said to lie in the combination of its detacha-

bility and the front rake which, when used as a power tool, effects a cutting slicing action against the surface of the wood or materials being bored. This is said to be a patentable improvement over the prior art, which taught only a tool with straight cutting edges to bore a hole by a gouging scraping action, or the conventional twisted bit which, when attached to a power tool, tended to pull or screw itself into the soft material.

The trial court found from competent expert testimony that the patented device was a new and useful improvement in the wood-boring art; and that it filled a felt need as evidenced by its immediate commercial success.

With immaterial qualifications, the statute, 66 Stat. 797, 35 U.S.C. § 101 et seq. says that the inventor of any such "new and useful" device may obtain a patent therefor, § 101, unless the "differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art * * *." § 103. It is agreed that the statutory standards for invention are but the codification of the common law—some courts say, as it has existed for the past one hundred years without recognition of any change in the inventive concept. Interstate Rubber Products Corp. v. Radiator Specialty Co., Inc., 4 Cir., 214 F.2d 546. Others say, as it existed at the time of codification. Bobertz v. General Motors Corp., 6 Cir., 228 F.2d 94; General Motors Corp. v. Estate Stove Co., 6 Cir., 203 F.2d 912; Wasserman v. Burgess & Blacher Co., 1 Cir., 217 F.2d 402; Seismograph Serv. Corp. v. Offshore Raydist, Inc., D. C., 135 F.Supp. 342; Burt v. Bilofsky, D.C., 120 F.Supp. 822. Still another court says that the underlying legislative intent was to ameliorate the harshness of the inventive concept inherent in the authoritative cases of the past two decades. Lyon v. Bausch & Lomb Optical Co., 2 Cir., 224 F.2d 530, certiorari denied 350 U.S. 911, 76 S.Ct. 193. And see also The New Patent Statute: Congress Re-

vitalizes the Patent System, 39 Am.Bar Assn.Journal, March 1953, pp. 209–212; Transitional Problems of the New Patent Act, 35 Journal of the Patent Office Society, May 1953, pp. 325–342; A New Patent Act—But the Same Basic Problem, 35 Journal of the Patent Office Society, July 1953, pp. 501–511; Some Aspects of the Underlying Legislative Intent of the Patent Act of 1952, 23 George Washington Law Review, June 1955, pp. 658–699.

Whatever shade of meaning we give to the codified common law, we know that at least since 1850, to be patentable, an improvement in the prior art must involve more ingenuity and skill than the work of an ordinary mechanic in the art. Hotchkiss v. Greenwood, 11 How. 248, 13 L.Ed. 683. Some have said that to involve more than mechanical skill, the improvement must display the "flash of creative genius", Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 41, 86 L.Ed. 58; or "push back the frontiers of chemistry, physics, and the like". See Douglas concurring in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Co., 340 U.S. 147, 71 S.Ct. 127, 131, 95 L.Ed. 162, and cases cited there. At the same time, those concurring in nonpatentability prefer to place it on the ground that the combination or improvement, when considered as a whole, must in some way exceed the sum of its parts; or "add to the sum of useful knowledge" of the subject matter. See Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Co., supra; see also Baum v. Jones & Laughlin Steel Corp., 10 Cir., 1956, 233 F.2d 865; Oliver United Filters v. Silver, 10 Cir., 206 F.2d 658; Shaffer v. Armer, 10 Cir., 184 F.2d 303.

The last line of Section 103 says that patentability "shall not be negatived by the manner in which the invention was made." That is to say, "it is immaterial whether it resulted from long toil and experimentation or from flash of genius." See Revisor's Notes following Section 103. Commentators say that the language in the sentence was aimed directly

at the "flash of genius" as exemplified in Cuno Engineering Corp. v. Automatic Devices Corp., supra. 23 George Washington Law Review, supra; 39 Am.Bar Assn.Journal, supra.

It may well be that the Congress intended to roll back the philosophical standards of patentability typified by Cuno Engineering Corp. v. Automatic Devices Corp., supra, and Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Co., supra. It did not and could not, however, intend to abandon the distinction between mere mechanical skill and "inventive genius", for that concept is inherent in the constitutional purpose "To promote the Progress of Science and useful Arts". Art. 1, § 8, Const. of United States. Indeed, the phrases "mechanical skill" and "inventive genius" have been used to mark the distinction between nonpatentability and patentability at least since before 1875. See Reckendorfer v. Faber, 92 U.S. 347, 23 L.Ed. 719. The concept was thus imported into the statute by the use of familiar and uncritical words, and it is our guide here.

And so, in the last analysis, we are brought back to the age-old test of whether the differences between what is old in the wood-boring art and what is wrought and claimed by the patented device when considered as a whole, would have been obvious to a person having ordinary skill in the art. The only new statutory word of significance is the word "obvious", and making application of it, the specific inquiry is whether the forward bending of the blade to form a curved cutting edge was obvious to the ordinary mehanic in the art. The question of course requires a reference to the prior art.

The appellee readily concedes on the record that the detachable feature on the blade is old with Shepardson No. 124,-089 (1872); and Windschief No. 20,-522 (1902). It is only when the detachable feature is considered in combination with the curved cutting edges that invention is claimed. Nor can a front rake to the cutting edges said to be new in the art. In their textbook on "Boiler Making and Repairs", published in 1926, Lindstrom and Clemens taught the art of both flat and twisted drill bits. The flat drill bit was given a front rake by grinding a groove just above the cutting edge. The tool was made more efficient by twisting the same into a spiral shape. See pp. 26–30. In his textbook on "Advance Machine Work", published in 1925, Smith also taught the art of giving the cutting edges to the drill bit a rake by grinding grooves above the cutting lips or by twisting the lips.

The idea of twisting a bit to obtain a front rake for cutting edges is not new. The record shows a spiral-type bit adaptable to high speed wood boring. While this device was developed after the patent in suit, the parties agree that it reads on the prior art; does not involve invention or infringe the patent in suit. The appellee freely concedes that if the accused bit had been twisted into a spiral shaped tool, it would not have infringed, although possessing a front rake. The inventor bases his claims to invention on the combination of detachability and a bent, as distinguished from a twisted, cutting edge to produce a new and useful result in the crowded wood-boring art.

It is true, however, the patent in suit is undoubtedly an improvement on the prior art. The bit was scientifically demonstrated to be superior to any bit which had been devised for high speed wood boring, including the accused device. Indeed, there was expert evidence to the effect that the patent in suit was the first detachable wood-boring blade with a front rake adaptable to use as a power tool.

No. 2,543,206, issued to Smith in February, 1951, showed a solid flat headed bit for high speed boring, but it did not show a curved cutting edge. Priest, President of the owner of the accused device, secured Patent No. 2,689,131 in February 1954, on a tool with shank and removable blade with a lead point, but it did not purport to disclose curved cutting edges.

The patent in suit is simple when viewed in retrospect. But simplicity is no bar to invention if the steps taken are not obvious to the ordinary mechanic. Goodyear Tire & Rubber Co., Inc. v. Ray-O-Vac Co., 321 U.S. 275, 64 S.Ct. 593, 88 L.Ed. 721; Diamond Rubber Co. of New York v. Consolidated Rubber Tire Co., 220 U.S. 428, 31 S.Ct. 444, 55 L.Ed. 527; Expanded Metal Co. v. Bradford, 214 U.S. 366, 29 S.Ct. 652, 53 L.Ed. 1034. In its formal findings, the trial court specifically found that the "steps taken by Mackey were not obvious or within the routine skill of those skilled in the art." The court seemed to be influenced by the idea embodied in a well known rule that if the improvement was simple, as it seems, why didn't some one else schooled in the art think of it and employ it before. The court thought it significant that the defendant-appellant "copied as nearly as he could" the patent in suit in the development of the accused device.

[3, 4] The statute accords presumptive validity to the patent, 35 U.S.C. § 282, and the trial court's judgment gives added weight. But the ultimate question of validity is one of law for us to decide for ourselves upon the record. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Co., supra; Westinghouse Electric & Mfg. Co. v. Formica Insulation Co., 266 U.S. 342, 45 S.Ct. 117, 69 L.Ed. 316; Crosley Corp. v. Westinghouse Electric & Mfg. Co., 3 Cir., 152 F.2d 895; Kawneer Co. v. Pittsburgh Plate Glass Co., D.C., 109 F.Supp. 228; De Burgh v. Kindel Furn. Co., D.C., 125 F.Supp. 468. If the twisting of the bit is not invention, can it be said that the bending of the same from the plane of the body is more than mere "perfection of workmanship" even though demonstrably more efficient? We think not. Shaffer v. Armer, supra; Baum v. Jones & Laughlin Steel Corp., supra. We accordingly conclude that the difference between the bend in the accused device and the spiral or twist in the prior art should have been obvious to the ordinary mechanic. The judgment is therefore reversed.