**MAZZELLA BLASTING MAT CO., Inc., Plaintiff,**

v.

**Salvatore VITIELLO, Jerry Vitiello and Carmine Vitiello, doing business under the name of Vitiello Blasting Mat Company, Defendants.**

United States District Court
S. D. New York.
Feb. 13, 1957.

Ernest G. Montague, New York City, for plaintiff.

Sugarman, Kuttner & Fuss, New York City, Howard L. Kuttner, New York City, of counsel, for defendants.

HERLANDS, District Judge.

This patent suit involves a safety device known as a blasting mat. Originally, and until about the 1920's, blasting mats were made principally of heavy manila or sisal rope. In the last 25 to 30 years blasting mats have been woven mainly of steel cable one-half inch to five-eighths inch in thickness.

The mats may vary in size, commonly measuring from 4 feet by 6 feet to 10 feet by 18 feet.

A blasting mat is used most frequently in foundation and construction jobs, where it is placed on and over the site where dynamite is to be exploded. The primary functions of the mat are two-fold: to prevent debris from flying in all directions from the scene of the explosion, and to absorb the major concussive shock of the explosion created by the rapidly expanding gases and air. Blasting mats may have other uses, as for example when they were used as structural parts of the New York City Police Department's Bomb Carrier.

Plaintiff and defendants are manufacturers of blasting mats. Plaintiff manufactures a blasting mat allegedly invented by Joseph S. Mazzella, its corporate president. This blasting mat is covered by a product patent No. 2,474,904, the

application for which was filed on June 24, 1948. The patent was issued on July 5, 1949 (Exhibit 11). Thereafter, Mazzella granted an exclusive license of the patent to the corporate plaintiff. The product made pursuant to the patent is exemplified by Exhibit 7.

Defendants have been and are manufacturing a blasting mat exemplified by Exhibits V and Y. The defendants' product is, in all material respects, identical with plaintiff's product.

The Court has jurisdiction of the parties to this action and the subject matter thereof.

Plaintiff accuses defendants of infringing its patent. Plaintiff seeks an injunction and an accounting.

In addition to general denials of the material facts, defendants' answer pleads invalidity of the patent in suit. Defendants challenge the foundation of plaintiff's claim by asserting that the Mazzella patent is invalid because (1) the identical product covered by the patent has been in public manufacture, sale and use for many years prior to the filing of Mazzella's patent application; and (2) the product covered by the patent was not, in fact, invented by Mazzella. Thus, the defendants plead non-infringement and invalidity.

The Supreme Court has said that it is "better practice" first to inquire fully into the validity of the patent where the defendant pleads both non-infringement and invalidity. Sinclair & Carroll Co., Inc. v. Interchemical Corp., 1945, 325 U.S. 327, 330, 65 S.Ct. 1143, 89 L.Ed. 1644; Blish, Mize & Silliman Hardware Co. v. Time Saver Tools, Inc., 10 Cir., 1956, 236 F.2d 913.

In view of the Court's finding and conclusion that plaintiff's patent is invalid, the question of infringement becomes moot.

While the Court has serious doubt that the patent in suit is sufficiently definite at the point of alleged invention (cf. Georgia-Pacific Plywood Co. v. U. S. Plywood Corp., D.C.S.D.N.Y.1956, 148 F. Supp. 846, the Court will assume, with-

out deciding, that the patent is sufficiently definite.

The patent covers a blasting mat whose essential features may be described as follows, in terms of its manufacture: (1) a continuous metal cable is wound up and down and around a series of fixed pins or pegs; (2) this winding forms vertical woofs consisting of double strands or double cables. The same continuous unbroken cable is then interlaced, alternately and horizontally, over and under the woofs thus forming warps. These horizontal warps are interwoven with the vertical woofs, back and forth across the entire width of the mat, until the body of the mat is complete except for the last two warp lines; (3) the last two warp lines are threaded, first in one direction and then back in the opposite direction, through the terminal loops or bights of the woofs and also alternately under and over pairs of adjacent strands of the woofs that are part of the terminal loops of the woofs. The "finishing off" process or "edge formation" just described accomplishes, in practice, a self-locking result that prevents the warps and the woofs from disengaging or unraveling or loosening.

Plaintiff asserts that the above product represents a patentable combination of some admittedly old elements and other allegedly new elements. The old elements are, according to plaintiff, the use of steel cable to form double stranded woofs and single stranded warps. The new elements are, according to plaintiff, (1) the use of one continuous unbroken length of cable, as distinguished from a couple or several lengths of shorter pieces of cable; and (2) the self-locking device represented by the last two lines of warps threaded through, under and over the terminal loops of the woofs.

Plaintiff asserts that the entire configuration and structure of the product and its resultant advantages of economy, strength and self-locking represent a combination invention, in which the whole entity is—mechanically and legally speaking—greater than the sum of its parts.

Special emphasis is placed by plaintiff on the third element—the self-locking device—as "the heart of the invention" and "the main teaching of the invention." Trial record, pp. 13, 15, 16, 376–377.

■ A careful study and analysis of the testimony and the exhibits lead irresistably to the Court's unqualified conclusion that plaintiff's patent (Exhibit 11), as exemplified by the model (Exhibit 7), is invalid for lack of invention.

With immaterial qualifications, the statute, 35 U.S.C.A. § 101 et seq., provides that the inventor of any "new and useful" manufacture or device "may obtain a patent therefor", Section 101, unless the "differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." Section 103.

There has been some difference among the courts with respect to the extent to which the statutory standards for invention codified the common law, and with respect to the question whether the underlying legislative intent was to ameliorate the harshness of the inventive concept inherent in the authoritative cases of the past two decades. Lyon v. Bausch & Lomb Optical Co., 2 Cir., 1955, 224 F. 2d 530, certiorari denied 350 U.S. 911, 76 S.Ct. 193, 100 L.Ed. 799.

The varying shades of judicial opinion are described in Blish, Mize & Silliman Hardware Co. v. Time Saver Tools, Inc., 10 Cir., 1956, 236 F.2d 913, 914. District Judge Dawson has analyzed the problem in The H. W. Gossard Co. v. Neatform Co., D.C.S.D.N.Y.1956, 143 F. Supp. 139, affirmed, 2 Cir., 1957, 240 F. 2d 948.

Judge Hand pointed out, in the Lyon case, supra, that the term "invention" had become perhaps "the most baffling concept in the whole catalogue of judicial efforts to provide postulates for indefinitely varying occasions." 224 F.2d at page 536.

Regardless of the variance in judicial language, the fundamental test still is: if an improvement is to obtain the privileged position of a patent, more ingenuity must be involved than the work of a mechanic skilled in the art.

The principle of the Hotchkiss case [Hotchkiss v. Greenwood], 1850, 11 How. 248, 52 U.S. 248, 13 L.Ed. 683, applies to the adaptation or combination of old or well-known devices for new uses. Cuno Engineering Corp. v. Automatic Devices Corp., 1941, 314 U.S. 84, 91, 62 S.Ct. 37, 86 L.Ed. 58. The current validity of that principle is explicitly recognized by Judge Hand in the Lyon case. See 224 F.2d at page 535.

In the Blish case, Judge Murrah said, 236 F.2d at pages 914–915:

"Whatever shade of meaning we give to the codified common law, we know that at least since 1850, to be patentable, an improvement in the prior art must involve more ingenuity and skill than the work of an ordinary mechanic in the art. Hotchkiss v. Greenwood, 11 How. 248, 13 L.Ed. 683. Some have said that to involve more than mechanical skill, the improvement must display the 'flash of creative genius', Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 41, 86 L.Ed. 58; or 'push back the frontiers of chemistry, physics, and the like'. See Douglas concurring in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Co., 340 U.S. 147, 71 S.Ct. 127, 131, 95 L.Ed. 162, and cases cited there. At the same time, those concurring in non-patentability prefer to place it on the ground that the combination or improvement, when considered as a whole, must in some way exceed the sum of its parts; or 'add to the sum of useful knowledge' of the subject matter. See Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Co., supra; see also Baum v. Jones & Laughlin Supply Co., 10 Cir., 1956, 233 F.2d 865; Oliver United Filters v. Silver, 10 Cir., 206 F.2d 658; Shaffer v. Armer, 10 Cir., 184 F.2d 303.

"The last line of Section 103 says that patentability 'shall not be negatived by the manner in which the invention was made.' That is to say, 'it is immaterial whether it resulted from long toil and experimentation or from flash of genius.' See Revisor's Notes following Section 103. Commentators say that the language in the sentence was aimed directly at the 'flash of genius' as exemplified in Cuno Engineering Corp. v. Automatic Devices Corp., supra, 23 George Washington Law Review, supra; 39 Am.Bar Assn. Journal, supra.

"It may well be that the Congress intended to roll back the philosophical standards of patentability typified by Cuno Engineering Corp. v. Automatic Devices Corp., supra, and Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Co., supra. It did not and could not, however, intend to abandon the distinction between mere mechanical skill and 'inventive genius', for that concept is inherent in the constitutional purpose 'To promote the Progress of Science and useful Arts'. Art. 1, § 8, Const. of United States. Indeed, the phrases 'mechanical skill' and 'inventive genius' have been used to mark the distinction between non-patentability and patentability at least since before 1875. See Reckendorfer v. Faber, 92 U.S. 347, 23 L.Ed. 719. The concept was thus imported into the statute by the use of familiar and uncritical words, and it is our guide here."

The language of Chief Judge Clark in Gentzel v. Manning, Maxwell & Moore, Inc., 2 Cir., 1956, 230 F.2d 341, 344 is apposite to the patent at bar:

" * * * The somewhat more lenient standard of patentability expressed in Lyon v. Bausch & Lomb Optical Co., 2 Cir., 224 F.2d 530, as required by the recently enacted statute, 35 U.S.C. § 103, will not

save this weak patent * * * since whatever advance plaintiff may have made over the prior art is both obvious and slight."

In other cases as well, the Court of Appeals in this circuit has held patents invalid,—notwithstanding the test of 35 U.S.C.A. § 103, as interpreted in the Lyon case,—where the improvement was obvious to a person having ordinary skill in the art. Wilson Athletic Goods Mfg. Co., Inc. v. Kennedy Sporting Goods Mfg. Co., Inc., 2 Cir., 1956, 233 F. 2d 280, 282.

What Circuit Judge Lumbard said in Welsh Manufacturing Company v. Sunware Products Co., 2 Cir., 1956, 236 F. 2d 225, 227, is especially applicable:

"We think it clear that even under the relaxed standard of invention of Lyon v. Bausch & Lomb Optical Co., 2 Cir., 1955, 224 F.2d 530, there was no invention here. It is not enough to show that the patentee's device was new and useful. It must in addition be an innovation which was not 'obvious * * * to a person having ordinary skill in the art.'"

In the Welsh Manufacturing Company case, plaintiff's innovation was held to be nothing more than a "common expedient known to skilled mechanics." In that case, the trial judge took judicial notice of what was "common everyday knowledge," that it was a common expedient to bend a wire into a shape, whereby the ends can be inserted into a tube or rod or into holes in an article for supporting or carrying the same. Commenting on that fact and the trial judge's judicial notice of it, Judge Lumbard said, 236 F. 2d at page 226:

"It is proper for the court to take judicial notice of matters of general knowledge which indicate that a device is not new. Slawson v. Grand Street, P. P. & F. R. Co., 1882, 107 U.S. 649, 654, 2 S.Ct. 663, 27 L.Ed. 576." See also The H. W. Gossard Co. v. Neatform Co., Inc., 2 Cir., 1957, 240 F.2d 948.

In the Blish case, supra, the inventor based "his claims to invention on the combination of detachability and a bent, as distinguished from a twisted, cutting edge" in a tool. In that case, Judge Murrah, in reversing the District Court and in holding the patent invalid for lack of invention, said:

"If the twisting of the bit is not invention, can it be said that the bending of the same from the plane of the body is more than mere 'perfection of workmanship' even though demonstrably more efficient? We think not. * * * We accordingly conclude that the difference between the bend in the accused device and the spiral or twist in the prior art should have been obvious to the ordinary mechanic."

■ Where there is no invention, the mere combination of ideas which enjoys commercial success by, for example, reducing prices or effecting economies does not satisfy even the relaxed test of invention of the Lyon case. Magnus Harmonica Corporation v. Lapin Products, Inc., 2 Cir., 1956, 236 F.2d 285.

The evidence in this case discloses that the blasting mat claimed to have been invented by Mazzella was simply the application of age-old weaving methods to steel rope.

The testimony of the impartial witness, Theodore Mombelly, an experienced professional engineer attached to the New York City Department of Public Works, is confirmatory of the view that the so-called self-locking effect accomplished by the particular use of the last two warp lines is only "a common expedient of long standing", "the most common way" to finish off blasting mats. See also the impartial testimony of Hyman W. Barron, a civil engineer connected with the Engineering Bureau of the New York City Police Department, Trial record, pp. 452–454.

The idea of intertwining brass or copper threads or wire to form a woven metallic structure is, perhaps, as old as

the building of King Solomon's temple. Kings, I, chapter 7, verses 13–17:

"13. And King Solomon sent and fetched Hiram out of Tyre. 14. * * * and he was filled with wisdom and understanding, and skill to work all works in brass. And he came to King Solomon, and wrought all his work. * * * 17. He also made *nets of checker-work,* and *wreaths of chain-work,* for the capitals which were upon the top of the pillars * * *."

The method of finishing off the mat disclosed in the plaintiff's patent is merely the application of a well-known method of finishing off woven products made of material other than steel rope. It is analogous to and a variant of the selvage edge of woven textile fabrics. Because of the inherent rigidity of steel rope the threading of the last two warp lines through, over and under the terminal woof loops or bights results in an edge which does not unravel or disentangle. This result was not achieved by a new technique or process.

The use of one continuous length of cable instead of several shorter pieces is not novel, according to the overwhelming weight of the credible evidence.

The Court finds and concludes that the particular mechanical arrangements and construction disclosed by the patent in suit represent nothing more than a selection of well-known elements and common expedients, none of which contributed, in combination, a new or unusual invention; and that the subject matter as a whole would have been obvious, at the time the claimed invention was made, to persons having ordinary skill in the art of making blasting mats. The patent in suit is invalid for want of invention.

The patent is invalid for the additional reason that the product covered by it was in public manufacture, sale and use for a long time prior to the date of the alleged invention.

The Court has closely observed all of the witnesses while they were on the stand and the Court has observed their demeanor, their manner of testifying, their apparent frankness or lack of frankness, their partisanship or impartiality. The Court has made every effort to evaluate the credibility of the witnesses, both in terms of the inherent persuasiveness of their testimony and their relative believability.

Plaintiff called three witnesses: Joseph S. Mazzella, president of the plaintiff corporation, Harold Becher, a professional engineer, and Albert Conte. The Court discredits their testimony. Mr. Becher was not a qualified expert on blasting mats. He acquired such detailed knowledge as he exhibited concerning blasting mats only after he was retained in this very litigation. Trial record, pp. 339, 340, 370, 371, 378. His primary sources of knowledge and information on the subject in issue were plaintiff's president and plaintiff's attorney. Trial record, pp. 341–342, 344–345. So far as this lawsuit is concerned, his testimony has no probative value.

Mr. Conte, an elderly gentleman, is a cousin of Mazzella, plaintiff's president. Trial record, p. 422. His partisanship and bias on behalf of plaintiff, as well as his unreliable memory, render his testimony unacceptable. He was an unimpressive witness.

The Court does not accept the story of Mazzella, the alleged inventor, as to the genesis of his alleged conception of the asserted invention embodied in Exhibit 7, nor does the Court accept his version of his alleged experiments in July 1947 which, he says, resulted in a new type of blasting mat, exemplified by Exhibit 7.

The evidence demonstrates, and the Court so finds, that Joseph S. Mazzella, the patentee, did not invent the product Exhibit 7 covered by the patent in suit (Exhibit 11) in July 1947 or at any other time.

The Court rejects as incredible the claim and testimony of Mazzella that he invented a novel self-locking device for blasting mats or that he invented the method of laying one continuous cable for use in making blasting mats.

The Court rejects as incredible the claim and testimony of Mazzella that Exhibit 4 exemplifies exclusively the state of the art of metal cable blasting mats prior to July 1947, the date of his alleged invention of Exhibit 7.

The Court finds that the defendants have established that the product covered by the patent in suit (Exhibit 11) was in prior public manufacture, sale and use long before the date (July 1947) of the alleged invention. The defendants have established that such prior public manufacture, sale and use go back probably as far as 1922 and certainly as far as the early 1930's. The defendants' proof of such prior manufacture, sale and use is clear, satisfactory and convincing beyond a reasonable doubt and consists of cumulative evidence that is corroborated.

The Court finds that probably since 1922 and certainly since the early 1930's there were public manufacture, sale and use of blasting mats—like Exhibit 7— that consisted of a combination of such elements as: one piece of continuous cable, double-stranded woofs, and a finishing-off edge formation consisting of two warp lines threaded through the terminal loops of the woofs. For example, blasting mats like Exhibit V were made, sold and used probably since 1922 and certainly the early 1930's. Blasting mats like Exhibit Y were made since 1933 and, in any event, prior to July 1947. See also Exhibits L and M.

Exhibits V and Y are, in all material respects, substantially identical to Exhibit 7, the product made under the patent in suit.

The Court finds that Joseph S. Mazzella was not the true and original first inventor of the double-stranded blasting mat covered by plaintiff's letters patent (Exhibit 11); that the said double-stranded blasting mat was not an invention, when produced by the said Joseph S. Mazzella and it was not novel; that Joseph S. Mazzella did not himself invent the mat which is the subject of plaintiff's letters patent (Exhibit 11); that the claimed invention was in public use or sale in this country for more than two years prior to the date of the application for said letters patent in the United States; and that the devices known as the double-strand blasting mats made, sold and used by defendants within this district and elsewhere in the United States are not an infringement of any valid letters patent.

Other public manufacture, sale and use of blasting mats (substantially identical with Exhibit 7) prior to July 1947, the date of the alleged invention, are made abundantly clear by the persuasive evidence adduced by defendants with reference to the five blasting mats bought by defendants from the New York City Department of Purchase on January 26, 1955. The proof on this subject includes, *inter alia*, Exhibits E, J, P, T, U, W, X.

According to the records of the City of New York (Exhibit U), the five mats were in the possession of the City of New York for 15 years prior to 1955. According to the disinterested testimony of Mr. Mombelly of the municipal Department of Public Works, these mats were, to his knowledge, in the possession of the city since 1943.

The impartial testimony of Louis Raphael, of the municipal Department of Purchase, who was called by the defendants, convincingly supports the defendants' contention that the blasting mat allegedly invented by Mazzella had, in fact, been manufactured and used many years before the date of plaintiff's patent or patent application or alleged invention. Thus, Mr. Raphael testified that the aforesaid five mats, 8 feet by 10 feet, were sold to the defendants on January 26, 1955; that these five mats (which were sold to defendants by the City of New York through its Department of Purchase) had come from its Department of Public Works, which had first purchased those mats for Civilian Defense purposes 15 years ago, Exhibit U. These five mats were relinquished by the municipal Department of Public Works and were sold to defendants as junk by the municipal Department of Purchase on January 26, 1955. These mats—in

the city's possession since about 1940— were shown to be substantially identical with the mat which Mazzella claims he invented in 1947.

The evidence also established the continuity of defendants' possession of these five mats, from the date of their purchase to the date of trial.

Plaintiff's attorney saw fit to take the stand as a witness in behalf of the plaintiff. Such testimony did not impeach defendants' proof that defendants bought said mats from the City of New York on January 26, 1955; that they were, since then, in defendants' continuous possession; and that Exhibits W and X are sections from two of the mats bought from the City of New York.

During the trial, both parties and their respective attorneys appeared at the defendants' place of business, pursuant to the Court's suggestion; and sections of two of the five mats were cut out therefrom by an oxy-acetylene torch. These two sections were introduced in evidence as Defendants' Exhibits W and X. Exhibit W was a section which plaintiff's attorney suggested be cut out. Exhibit X was a section which defendants' attorney selected. Exhibits W and X disclose all of the essential characteristics and elements of Exhibit 7, which is the mat manufactured under the patent in suit.

Exhibits W and X demonstrate conclusively that the very type of blasting mat which Mazzella claims he invented in July, 1947, had, in fact, been manufactured, sold and used a number of years before then.

Another conclusive illustration of prior public manufacture, sale and use of mats is contained in the evidence relating to the so-called LaGuardia bomb carrier. The Court finds that, on or about December 1, 1942, defendants sold a number of blasting mats to the Tyroler Iron Works, who sold them to the City of New York for use in the so-called LaGuardia bomb carrier, see, *inter alia*, Exhibits A, B, K, S, Z; and Exhibits 17 and 18. The Court finds that these blasting mats—made and sold in 1942— were in all essential features the same as the blasting mat, Exhibit 7, allegedly invented by Mazzella in July, 1947.

Still another illustration of prior public manufacture, sale and use of blasting mats identical with Mazzella's alleged 1947 discovery is established by the evidence relating to the blasting mats used in 1945 on the New York Times Annex construction job by the George J. Atwell Construction Corp. The latter purchased a number of blasting mats from the defendants on August 30, 1945. The proof on this subject includes, *inter alia*, Exhibits F, G, N and O. These mats of 1945 vintage were 12 feet by 14 feet; were of the same construction as Defendants' Exhibit V, which is indistinguishable from the plaintiff's alleged 1947 invention, Exhibit 7.

Upon the full record, made at a trial lasting six days, the Court finds for the defendants and dismisses the complaint on the merits, with costs to defendants against plaintiff.

The U. S. Letters Patent No. 2,474,904, issued on July 5, 1949, to Joseph S. Mazzella of the County of Bronx, City and State of New York, for "double stranded blasting mat" were not legally issued to the said Joseph S. Mazzella; and said U. S. Letters Patent are hereby declared and decreed to be invalid.

This opinion and decision shall constitute the findings of fact and conclusions of law, pursuant to Federal Rules of Civil Practice, rule 52, 28 U.S.C.A.

The complaint is hereby dismissed on the merits, with costs to the defendants against the plaintiff.

A judgment in accordance with the foregoing decision shall be entered forthwith by the clerk. Federal Rules of Civil Procedure, Rule 58; Matteson v. United States, 2 Cir., 1956, 240 F.2d 517.

Settle formal judgment on notice within five days hereof.