308 F.2d 705
 135 U.S.P.Q. 149
 SEARS, ROEBUCK & CO., a New York corporation; and Parker
Manufacturing Company, a Massachusetts
corporation, Appellants,
v.
Harold T. JONES and The Petersen Manufacturing Company,
Inc., a Nebraskacorporation, Appellees.
 No. 6716.
 United States Court of Appeals Tenth Circuit.
 Sept. 12, 1962.
 
 Philip H. Sheridan, Denver, Colo., and Cedric W. Porter, Boston, Mass., for appellants.
 Jerome R. Strickland, Edwin L. Spangler, Jr., Denver, Colo., Herbert J. Jacobi and Samuel L. Davidson, Washington, D.C., for appellees.
 Before MURRAH, Chief Judge, and BREITENSTEIN and HILL, Circuit Judges.
 MURRAH, Chief Judge.
 
 
 1
 This is an appeal from a judgment holding appellees' patent for 'Locking Wrench and Pliers' valid and infringed and enjoining the future sale of appellants' accused device. Jones is the owner of the patent in suit, and Petersen Manufacturing Company, Inc. is his exclusive licensee. Sears, Roebuck & Co. markets the accused device, manufactured by Parker Manufacturing Company.
 
 
 2
 Appellants first assert noninfringement, then invalidity, But, we follow what has been said to be the better practice, and first consider the issue of the validity of the patent. Sinclair & Carroll Co., Inc., v. Interchemical Corp., 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644; and see: Blish, Mize and Silliman Hardware Co. v. Time Saver Tools, Inc. (10 C.A.),236 F.2d 913.
 
 
 3
 The patent in suit (Jones' #2,514,130) relates to a plier-type toggle wrench[1] having a quick and easily operated release lever positioned between the handles of the wrench and adapted to pry the wrench open. The release mechanism, which constitutes the improvement embodied in the patent, is described in Jones' specifications as comprising a lever pivotally mounted on the movable handle, within the channel formed by the sides of such handle, the forward end or toe of which, when the lever is moved toward the fixed handle, comes against the lug on the bifurcated toggle link and thus moves the center pivot point across the 'dead center line.' Jones also describes a heel portion on his lever, so that when the release lever is moved away from the fixed handle it rocks on its heel and the toe portion cams against the lug on the toggle link, again causing the center pivot point to cross the 'dead center line,' thus breaking the toggle. Hence, as specifically described and exemplified in its preferred form in the specifications, Jones' lever pivots on the movable handle and cams against the toggle link to break the toggle and open the jaws of the wrench.
 
 
 4
 The trial court found, and the evidence confirms, that Jones was the first in the art to disclose a release lever of any kind between the handles of a plier-type toggle wrench which cooperated with the movable handle and toggle link to pry open the jaws of the wrench. And an examination of the prior art discloses no patents previous to Jones' first filing date teaching the Jones method of release, i.e., the cooperation of a lever with the handle and toggle link to pry open the jaws of a toggle wrench. In this regard, the trial court found that the Jones patent disclosed a pioneer invention and that its claims were entitled to an interpretation with a full range of equivalency. The court noted, however, that even if the invention be not pioneer, it is at least entitled to the doctrine of equivalents to some substantial extent, by reason of its important contribution to the art.[2] And we are convinced from an examination of the findings of the trial court and their record support that the patent in suit is neither void by reason of anticipation by prior art nor by obviousness.
 
 
 5
 In typically esoteric phraseology, the claims of the patent held to be infringed (Claims 1, 4 and 5) describe, in essence, the following improvements.
 
 
 6
 Claim 1: A release lever pivotally attached to the movable handle which cams against the toggle link in its closed position to open the toggle-- thus opening the jaws of the wrench.
 
 
 7
 Claim 4: A release lever pivotally attached to the movable handle which cams against either the toggle link or the fixed handle to open the wrench.
 
 
 8
 Claim 5: A release lever pivotally attached to either the movable handle, the fixed handle, or the toggle link and which, by camming means, opens the jaws of the wrench when rocked about its pivot.
 
 
 9
 It is conceded that Claims 1 and 4 do not read directly upon appellants' accused device, which adapts to a toggle wrench a release lever pivotally attached to the toggle link and which, by camming action against the movable handle, breaks the 'toggle' and opens the wrench. The trial court found, however, that the application of the release lever utilized by the accused device employed a mere reversal of the parts demonstrated in the patent in suit. Indeed, as the trial court observed, the only substantial distinction is that in one the lever pivots on the movable handle and cames against the toggle link and in the other it pivots on the toggle link and cams against the movable handle. We agree with the finding of the trial court, supporting his conclusion of infringement as to Claims 1 and 4, that 'defendants' device produces the same result in substantially the same way and by substantially the same means * * *' as that described in the patent in suit. See: Johns-Manville Corp. v. National Tank Seal Co. (10 C.A.), 49 F.2d 142, 146; and Sanitary Refrigerator Co. v. Winters et al., 280 U.S. 30, 42, 50 S.Ct. 9, 74 L.Ed. 147.
 
 
 10
 Appellants contend, however, that the form of release employed by their wrench was not precisely disclosed by the Jones specifications and that the equivalency afforded the Jones invention by the trial court served to void that patent for indefiniteness. Jones' specifications, however, clearly demonstrate the release lever positioned between the handles, pivotally attached to the movable handle so as to cam against the toggle link. There is nothing indefinite about this disclosure which sets forth, by word and picture, the same operative parts and inventive method which was reversed, with inconsequential variations in structure, by appellants.
 
 
 11
 Relatedly, we reject appellants' argument that the trial court erred in extending to the patent in suit too wide a range of equivalency. The obvious reversal of parts employed by the accused device is necessarily included within the minimal equivalency to which even a patent granted on a small advance over a prior crowded art is entitled. See: Skinner Bros. Belting Co. v. Oil Well Improvements Co. (10 C.A.), 54 F.2d 896.
 
 
 12
 Claim 5, which reads directly on the accused device, is said by appellants to be void for two reasons: One-- It is not supported by the disclosure of Jones' patent. Two-- It was first filed more than one year after the public sale and use of a wrench utilizing the design and operation which it sets forth.
 
 
 13
 35 U.S.C. 112 provides that '* * * the specification shall contain a written description of the invention, and of the manner and process of making and using it * * *.' But this does not require a description of all of the variations which might suggest themselves to one versed in the art. And in light of our approval of the trial court's finding of a reversal of parts, appellants' contention relative to inadequate disclosure by Jones dissolves into the untenable complaint that Jones did not specifically describe the reversed application of his invention.
 
 
 14
 Appellants' assertion concerning the previous public sale and use of a wrench encompassed within the specific language of Claim 5 requires additional consideration. 35 U.S.C. 102(b) provides, in essence, that a person shall not be entitled to a patent if his invention has been in public use or sale for more than one year prior to the application. And it is conceded by appellees that a wrench, having properties like those of the accused device and which are directly covered by Claim 5, was commercially marketed by one Seymore Smith more than one year prior to the filing of that claim. But, the trial court found, and the proof confirms, that Jones had, during the pendency of his original patent application, constructed a model plier-type wrench having a release lever pivoted on the toggle link, as in the cases of the accused device and the wrench later marketed by Smith. This model wrench was shown by Jones to his patent attorneys, who advised him that the structure embodied in the model was included and protected within the range of equivalency attaching to the original patent disclosure. And in light of the trial court's findings that the variation contained in the accused device (and in the Smith wrench) was but an infringing reversal of parts, the advice thus given was sound. Indeed, the variations recited in Claim 5 are but explicit statements of what is necessarily implicit in the original disclosure of Jones's patent. For this reason the principles concerning prior public use espoused in Schriber-Schroth Co. v. Cleveland Trust Co., 305 U.S. 47, 573,59 S.Ct. 8, 83 L.Ed. 34, and Muncie Gear Works, Inc. v. Outboard Marine & Mfg. Co., 315 U.S. 759, 62 S.Ct. 865, 86 L.Ed. 1171 are here inapplicable. Those principles have as their purpose the protection of rights intervening prior to some 'new invention' stated in a later claim. Here, the Smith Wrench was within the clear range of equivalency, hence anticipated by the disclosures of Jones patent application, filed long prior to the use and sale of that wrench. No 'intervening rights,' such as would render Claim 5 invalid could therefore exist.
 
 
 15
 Lastly, appellants assert the 'Doctrine of File Wrapper Estoppel,' i.e., that in the prosecution of his patent within the Patent Office, Jones cancelled certain rejected claims, accepted narrower claims in their stead, and is now estopped from obtaining a breadth of construction as broad as that contained in the claims voluntarily cancelled. We have recognized and applied this doctrine on several occasions. See, e.g.: Jensen-Salsbery Laboratories, Inc., v. Franklin Blackleg Serum Co. (10 C.A.), 72 F.2d 15; Ratigan v. Deckard Supply Co. (10 C.A.), 91 F.2d 722; Texas Co. v. Anderson-Pritchard Refining Corp. (10 C.A.), 122 F.2d 829; Jones v. Bodaness (10 C.A.), 189 F.2d 838; United States Air Conditioning Corp. v. Governair Corp. (10 C.A.),216 F.2d 430; and Doran Coffee Roasting Co. v. Wyott Mfg. Co. (10 C.A.),267 F.2d 200. In these cases, however, the patentee limited his claim to a specific structural detail in view of the disclosures of prior art; argued and represented that the structural detail defined in his claims constituted the distinguishing feature of his patent over prior art; and issued his patent only with claims limited to such structural detail, thus acquiescing in the Patent Office rejections based on prior art disclosure. Jones' difficulty with the Patent Office did not result from any prior art similarities which had to be resolved by the limitation of his inventive claims to structural differences. Rather, Jones' attorneys had difficulty in wording claims acceptable to the Patent Office and the rejection of claims was based on 'indefiniteness.' The claims in suit solved Jones' problem of 'indefiniteness' and since Jones did not, by representation or acquiescence, limit his patent to the specific structure of a release lever pivoted on the movable handle, we find no estoppel.
 
 
 16
 Affirmed.
 
 
 
 [1]
 The operating principle of the 'toggle' wrench, in connection with the usual plier-type wrench action of jaws of a fixed handle and a movable handle, utilizes a toggle joint comprised of the pivoted movable handle and a toggle link pivotally engaged at its lower end to the movable handle and constituting a 'central pivot point.' When this central pivot point to the toggle joint crosses the 'dead center position' the toggle joint imposes a locking action on the movable jaw of the wrench to hold the work piece in a vice-like grip
 
 
 [2]
 Without release lever, the forcible use of both hands by the operator of a toggle wrench is necessary to effect its disengagement from the work piece-- a requirement proving to be difficult as well as productive of 'skinned knuckles' under various circumstances, especially when the wrench is used in restricted places