**SCHRAMM, INC., Plaintiff,**

v.

**James Nelson HINDE and Hinde Engineering Company, Defendants.**

**No. 71 C 2281.**

United States District Court, N. D. Illinois.

Oct. 22, 1974.

George B. Newitt, Molinare, Allegretti, Newitt & Witcoff, Chicago, Ill., George A. Smith, Smith, Harding, Earley & Follmer, Philadelphia, Pa., for plaintiff.

Fred Lockwood, John L. Alex, James N. Videbeck, Lockwood, Dewey, Zickert & Alex, Chicago, Ill., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BAUER, District Judge.

This is an action for a declaratory judgment brought by plaintiff Schramm, Inc. ("Schramm") against James Nelson Hinde ("Hinde"), the owner of U.S. Patent 3,234,123, and his exclusive licensee under the patent, Hinde Engineering Company. Plaintiff seeks a declaratory judgment that the patent is not infringed by the aerated sewage treatment lagoons located at the Village of Aurora, New York, for which plaintiff supplied the aeration tubing and compressors. Defendants have counterclaimed alleging infringement of the patent.

The patent in question was held valid by the District Court for the District of Colorado in Hinde, et al. v. Hot Sulphur Springs, Colorado, D.C.Colo., 359 F.Supp. 987, aff'd 482 F.2d 829, 10th Cir. Schramm participated in the defense of Hot Sulphur Springs and is therefore bound by the parameters of that decision. Consequently, this action did not raise the question of the validity of the patent which was established by the decision of the Colorado court.

The Court has reviewed all of the evidence and exhibits presented at trial and the extensive and thorough post-trial briefs submitted by the parties. In respect to the central issue of infringement, both parties focus on bubble size, how to measure bubble size, and laminar flow versus turbulent flow. Concentration on these questions is appropriate since plaintiff alleges that there is no infringement of the patent at the Aurora installation due to a different size of bubble, and, flow of aerated liquid produced by the plaintiff's method of water aeration. However, it is the judgment of this Court that defendants' patent was infringed.

## FINDINGS OF FACT

I. *The Parties*

1. Plaintiff, Schramm, Inc. is a corporation of Pennsylvania having its principal place of business in West Chester, Pennsylvania.

2. Defendant, James Nelson Hinde, is a citizen of the State of Illinois residing at 1891 Hilltop Lane, Bannockburn, Illinois.

3. Defendant, Hinde Engineering Company, is a corporation of the State of Delaware having its principal place of business at 654 Deerfield Road, Highland Park, Illinois.

II. *The Court's Jurisdiction*

4. This action arises from an actual justiciable controversy between plaintiff and defendants with respect to a charge by defendants that the Village of Aurora, New York infringed United States Patent 3,234,123 which was issued to defendant James Nelson Hinde for "Method Of and Means For Treating Bodies of Water". The aforementioned controversy is within the Court's jurisdiction under 28 U.S.C. § 1338(a) and § 1332(a). In addition this Court has jurisdiction under the Declaratory Judgments Act, 28 U.S.C. § 2201 and § 2202. The Court has jurisdiction of defendants' counterclaim under 28 U.S.C. § 1338(a).

III. *The Issues*

5. This civil action was commenced with the filing of a complaint on September 17, 1971 by Schramm, Inc. seeking a declaratory judgment that United States patent 3,234,123 is not infringed by the sewage treatment installation at the Village of Aurora, New York. Defendants answered the complaint, and

filed an accompanying counterclaim charging plaintiff with infringement. Plaintiff is estopped from contesting the validity of the patent in suit because of prior litigation in which plaintiff was involved.

The central issue before the Court, therefore, is whether or not the installation at Aurora infringed claims 8 and 21 of the patent.

#### IV. *The Ownership of the Patent*

6. United States Patent 3,234,123 is owned by defendant James Nelson Hinde. Defendant Hinde Engineering Company is his exclusive licensee under the patent.

#### V. *Acts of the Parties*

7. Plaintiff, Schramm, Inc. is in the business of manufacturing air compressors. Among its activities are the manufacture and sale of systems for bubbler deicing, reservoir or lake treatment and destratification, oil spill control and waste water treatment. All of these systems utilize air compressors.

8. Plaintiff sold perforated tubing and compressors to the contracting firm of Hull-Hazard, Inc. of 801 North Salina, Syracuse, New York for use in a sewage treatment plant which was constructed by Hull-Hazard, Inc. for the Village of Aurora, New York. The installation of the sewage treatment plant was completed in the late summer of 1971.

9. Defendants notified the Village of Aurora by way of a letter dated September 1, 1971, written by their attorneys, that the Village had recently installed an aerated waste treatment lagoon that "apparently infringed one or more claims of Patent 3,234,123".

#### VI. *The Patent in Suit and The Infringement*

10. The patent in suit relates to "Method and Means for Treating Bodies of Water" and more specifically to the treatment of domestic and/or industrial sewage and waste. It discloses the use of lengths of weighted flexible plastic tubing in parallel array to release air in bubble form into a liquid body of sewage or industrial waste in order to remove impurities and to convert it to an innocuous form.

11. The '123 patent in suit was filed on December 26, 1972 and was designated a "continuation-in-part" of United States Patent 3,293,861, filed on November 13, 1961.

12. The '123 patent relates to the method and means for treatment of bodies of water with air or gas for specific purpose, including the complete treatment of domestic sewage in a pond or lagoon. Such bodies are treated through the use of hydraulically created and maintained straight elongated curtains formed by the upward laminar flow of aerated or gasified liquid or water above submerged conduits made of slitted flexible tubing which release streams of bubbles over straight elongated paths. The hydraulic curtains thus formed subdivide the body of liquid into a series of hydraulically defined and maintained treatment cells wherein the liquid undergoes recirculation and in which controlled aerobic treatment is carried out.

13. The '123 patent discloses that no matter which of its stated purposes the invention is used to achieve, use is made of the plurality of submerged conduits in a predetermined pattern where they are spaced in straight lines parallel to each other, so that the release of air bubbles from the conduits creates and maintains above each conduit upward laminar flow of a straight curtain of aerated water and forms recirculation currents which divide the liquid into a series of parallel, hydraulically defined cells.

14. The '123 patent discloses several embodiments illustrating ways in which the invention described may be practiced. Figures 1 and 2 show a sewage lagoon having submerged conduits installed therein in a pre-arranged pattern dividing the water in the lagoon into a series of parallel, hydraulically defined, aeration treatment cells and indicating, in Figure 2, the different sizes of such treatment cells. Figures 1 and 2, as de-

scribed by the pertinent portions of the specifications, are shown by the evidence to correspond to the Hot Sulphur Springs installation. Utilized in the embodiment of Figures 1 and 2 is the weighted flexible tubing having narrow rows of self-closing slit valves in the upper portion thereof. The tubing is laid in parallel lengths on the bottom of the lagoon transversely to the direction of the flow. Figure 12 shows a length of such tubing and column 4, line 67, to column 5, line 2 of the specification of the '123 patent describe it. Column 4, lines 63 to 67 refer to the '861 patent, and a more detailed description of the tubing is found there.

15. In the '123 patent are instructions on how to obtain the described control and variation of the release of bubbles by varying either the spacing or the length, or both, of the slit valves. The patent points out that bubbles under one-eighth of an inch diameter tend to rise with a minimum of spreading and create laminar flow, whereas larger bubbles tend to create non-laminar flow, and it indicates that in all cases the bubbles are released from the tubing in such a manner that they rise straight up with a minimum of merging and an absence of turbulent flow.

16. The '123 patent also contains a thoroughly detailed description of the construction and operation of the installation illustrated in Figures 1 and 2, as well as specific information for treating domestic sewage for 500 to 600 people in a five-foot deep pond. The sewage treatment lagoon shown on Figures 1 and 2 of the '123 patent is fully described as to construction and operation in claims 21 and 8, respectively.

17. The evidence establishes that what is offered by James Nelson Hinde and Hinde Engineering Company as their Air-Aqua system coincides with what is disclosed in claims 8 and 21 of the '123 patent and can be operated and constructed, respectively, therefrom.

18. The Hinde system allegedly produces different size bubbles (i. e., greater than $\frac{1}{8}$th inch) and a turbulent flow. However, a complete review of the evidence demonstrates that these minor differences (differences which may occur only because of the method of measuring by Dr. Marks and Mr. Hinde) do not affect the results produced. In addition the difference in the alignment of slit valves in the Schramm tubing as compared to Hinde's tubing has been demonstrated to provide no real change in overall results.

19. Schramm acknowledged that the accused installation at Aurora is very similar to what is disclosed in the Hinde '123 patent in suit with the only differences asserted by Schramm being in bubble size, and laminar flow versus turbulent flow.

20. The testimony of Dr. Marks and Mr. Hinde is conflicting both as to the numbers and sizes of the bubbles not exceeding approximately one eighth inch in diameter. The '123 patent is silent as to what method or technique should be used for measuring bubbles. The Court adopts the visual method used by Mr. Hinde over the indirect method used by Dr. Marks. Furthermore, while the record of the Denver case, like the patent, is silent as to the method of measuring bubble size employed therein, it does indicate that the court and witnesses in that case estimated the sizes of the bubbles by direct visual examination.

21. Having observed the courtroom demonstrations put on by both parties the Court did not detect any material differences between them as to the sizes of bubbles released. In all tests the various pieces of aeration tubing appeared to release small bubbles through the slit valves and these bubbles rose to the surface directly over each piece of tubing. It appeared to the Court that there was a straight curtain of aerated water rising above each piece of tubing that conformed to what is referred to in the '123 patent, including claims 8 and 21, as upward laminar flow.

22. While Dr. Marks testified that in his opinion the flow produced above each of the pieces of aeration tubing used in the courtroom demonstrations was tur-

bulent as distinguished from laminar, it was clear that he was not interpreting either of the dichotomic designations "laminar flow" and "turbulent flow" or "turbulence" as specially used in the Hinde '123 patent but in accordance with the substantially different classical definitions employed by fluid dynamasists. Accordingly, little weight can be attached to Dr. Marks' opinion testimony for the purposes of this infringement suit.

23. The Court heard the uncontroverted testimony of Mr. Hinde that in operation the accused aeration lagoons at Aurora exhibited the same appearance as that of the aeration lagoons at Hot Sulphur Springs that were held to infringe as well as an appearance characteristic of well over 100 Hinde Air-Aqua aeration lagoons which he had personally visited that where made and operated according to the Hinde '123 patent. The Court also attaches considerable weight to the uncontroverted testimony of Gary A. Boulier who had designed several hundred Hinde Air-Aqua lagoons and had seen over 50 in operation. Mr. Boulier testified that in operation the lagoons at Aurora exhibited the same appearance as the Hinde Air-Aqua aeration lagoons at Tully, New York which conformed to the typical appearance of Hinde Air-Aqua aeration lagoons.

24. The testimony of Messrs. Hinde and Boulier that the accused aeration lagoons at Aurora correspond to typical Hinde Air-Aqua aerated lagoons is corroborated by the deposition testimony of Thomas S. Ladue, the project engineer on both the Aurora and Tully, New York installations, that both installations operated in the same way and both exhibited a similar pattern of air bubbles in parallel lines.

25. The consulting engineers on the accused aeration lagoon installation at Aurora approved the substitution of Schramm, Inc.'s aeration equipment for the Hinde Air-Aqua equipment they had specified since the substitution did not represent any change in the process specified and met the design layout on the lagoons.

26. The only physical respect in which Schramm, Inc.'s perforated or aeration tubing in the accused Aurora installation differs from its tubing installed in the sewage treatment lagoons at Hot Sulphur Springs is in the perforations or slit valves being on 5½" centers. Even the same drawings were used for both tubings.

27. The only difference asserted by Schramm between the operation of the compressors or blowers at the Aurora installation and the operation of those installed at the sewage treatment lagoons at Hot Sulphur Springs is that those at Aurora originally delivered 122 cfm and are now delivering 75 cfm whereas those at Hot Sulphur Springs delivered 60 cfm.

28. The manuals of operations and maintenance prepared by the consulting engineers for the aerated lagoons at Aurora and Tully, New York correspond closely and to a large extent provide identical instructions.

29. The accused aerated lagoon installation at Aurora embodies all the mechanical elements and features, and operates in substantially the same way to accomplish the same results, as the method and apparatus defined in claims 8 and 21, respectively, of the Hinde '123 patent and, therefore, each of these claims is infringed by that installation.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and of the subject matter of this suit. Venue is properly laid in this District.

2. Defendant, James Nelson Hinde, has title to United States Letters Patent No. 3,234,123 and granted an exclusive license thereunder to defendant, Hinde Engineering Company, said defendants together being the owners of all right, title and interest in and to patent 3,234,123 including the rights of recovery for past infringement.

3. Plaintiff having been held to be in privity with the defendant. the town of Hot Sulphur Springs, in Civil Action No. C–1936 in the United States District Court for Colorado in which claims 8 and 21 were held valid and infringed, plaintiff is estopped to contest the validity of these claims, and any and all essential findings of fact, or mixed findings of fact and law, in C–1936 are binding on plaintiff. Yates, et al. v. United States, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957); E. I. duPont de Nemours and Co. v. Union Carbide Corp., 369 F.2d 242 (7th Cir. 1966); E. V. Prentice Machinery Co., et al. v. Associated Plywood Mills, Inc., 252 F.2d 473 (9th Cir, 1958).

4. United States Letters Patent No. 3,234,123 was duly and legally issued on an application filed by James Nelson Hinde on December 26, 1962. Claims 8 and 21 thereof are valid and subsisting in law and are infringed by plaintiff.

5. The accused installation infringes since it not only falls clearly and definitely within the scope of claims as worded but it also does the same work in substantially the same way and accomplishes substantially the same result. Edwards v. Hychex Produces, et al., 171 F.2d 259 (7th Cir. 1948); Merrill v. Builders Ornamental Iron Co., 197 F.2d 16 (10th Cir. 1952); King Seeley Thermos Co. v. Refrigerated Dispensers, Inc., 354 F.2d 533 (10th Cir. 1965).

6. To the extent that any differences may exist between the invention as defined in the asserted claims of the patent in suit and the accused installation they fall within the doctrine of equivalents which operates for the patentees of both pioneer inventions and of secondary inventions consisting of a combination of old elements which produce new and useful results. Graver Tank Mfg. Co., Inc. v. Linde Air Products Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950); McCullough Tool Company v. Well Surveys, Inc., 343 F.2d 381 (10th Cir. 1965).

7. The doctrine of file wrapper estoppel does not apply to the limitations in the asserted claims of the patent in suit with respect to bubble size since they were inserted in order to better define the invention rather than to avoid anticipation by prior art. Ellipse Corporation v. Ford Motor Company, 452 F. 2d 163 (7th Cir. 1971); Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); Kolene Corporation v. Motor City Metal Treating, Inc., 440 F.2d 77 (6th Cir. 1971); Sears Roebuck & Co. v. Jones, 308 F.2d 705 (10th Cir. 1962); Eimco Corporation v. Peterson Filters and Engineering Co., 406 F.2d 431 (10th Cir. 1968); McCullough Tool Company v. Well Surveys, Inc. *supra*.

8. All matters regarding the amount and extent of expenses, damages, costs and attorneys' fees are reserved for further hearing at such time as an accounting against the plaintiff is had.

Accordingly, it is hereby ordered that plaintiff is liable to defendants for damages due to wrongful infringement of United States Letters Patent No. 3,234,123. The parties are instructed to schedule a further hearing on damages.