26 C.C.P.A. (Patents)

## In re ATKINSON.

### Patent Appeals No. 4137.

Court of Customs and Patent Appeals.

April 10, 1939.

George J. Schottler, of New York City, for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

Certain of the claims of appellant's application for a patent on a method and apparatus for measuring the eccentricity of tubular conductors were denied, and others were allowed by the Primary Examiner of the United States Patent Office. Upon appeal to the Board of Appeals, the decision of the examiner was affirmed and applicant has appealed here.

The application relates to measuring and recording the variations of thickness of the walls of tubular conductors such as the lead sheaths or pipes around electric wires. Appellant's device consists of surrounding the conductor, as it comes from the machine which makes it, with a coil which is connected with a source of alternating current. Two or more contact points are arranged so that the current passing between the points is recorded in a conventional recording millivoltmeter having marking or recording facilities so as to make a continuous record of the variations in thickness of the tubular conductor which result from the variations of the voltage being received from the instrument.

Claims 10 and 27 are regarded as representative of the apparatus and method claims involved in the appeal and follow:

"10. Apparatus for measuring variation in the thickness of a tubular conductor comprising, in combination, a coil through

which the conductor passes for inducing an electric current flow circumferentially in the conductor, contacts for engaging the conductor at circumferentially spaced points, means for causing relative movement longitudinally of the conductor between the conductor on the one hand and the coil and the contacts on the other hand, and means for causing much slower relative movement circumferentially of the conductor between the conductor on the one hand and the coil and the contacts on the other hand, and means connected to said contacts for measuring continuously the amount of variation in the circumferential resistance of the conductor between the contacts.

"27. The method of measuring eccentricity in a tubular conductor which comprises causing a current to flow circumferentially in the conductor, and continuously recording the amount of variation in the voltage between circumferentially spaced contact points at a definite angular separation and a changing position on the conductor surface by causing the contact points to change position longitudinally of the conductor and simultaneously to change position circumferentially of the conductor, the circumferential movement being relatively slow compared to the longitudinal movement."

The references relied upon are: Herrick, 907,235, December 22, 1908; German patent, 376,358, May 28, 1923; Braddon et al., 1,946,189, February 6, 1934.

The examiner has very carefully analyzed the claims and the references and in his rejection of the appealed claims he has discussed every question presented in very great detail. The discussion is so apt that we think no useful purpose, could be served by here paraphrasing the same and much of his decision will be quoted.

The patent to Braddon et al. describes an apparatus for testing conductors for fissures and eccentricity. It operates very much as does the apparatus of applicant except that one record is kept for fissures and another one is kept for eccentricity. The patent teaches the recording of variations of eccentricity only when they have exceeded a predetermined degree.

The patent to Herrick is cited to show the use of a recording voltmeter which records the current received from a pair of potential contacts, and a record is made on a sheet of paper substantially as is shown by the applicant.

The German patent also relates to an apparatus for testing tubular conductors. It measures variations in voltage passing between contacts. This patent shows two pairs of contacts.

Claims 5, 7, 8, 10, 12, 26 and 27 were finally rejected as unpatentable over Braddon et al. in view of Herrick, it being held that it would not involve invention to substitute a recording voltmeter such as is shown by Herrick for the relay of the Braddon et al. device.

The examiner in his statement said:

"* * * The applicant's main objection to the Braddon et al. patent as a reference is that the patented device makes a record of variations in the voltage across contacts 19 only when such variations exceed a predetermined value. Braddon et al. is only concerned with such variations as result when the tubular member tested is unfit for service and therefore does not want the record to show a large number of marks most of which would have no bearing on the fitness of the conductor. He therefore records only the important variations. The applicant records the value of all variations and must inspect each one to determine whether it is of such an extent to be important. It therefore appears that the device is no improvement of the device of Braddon et al. However, irrespective of the utility of the device over what is disclosed by Braddon et al., the use of recording meters of all types is so common that no invention is seen broadly in employing a meter of this type in any circuit where it is desired to make a permanent record of voltage, current, or power. Applicant in lines 2 to 8, page 11 of his specification, admits that the specific recorder is old in the art and does not form a part of his invention. The patent to Herring [Herrick] is cited to show one type of recording voltmeter and no invention is seen in substituting a meter of this type for the relay 32 of Braddon et al. The applicant objects to this combination of references on the ground that the Braddon et al. device is operated at too high a speed to allow the use of a recording voltmeter. Nothing is stated in the Braddon et al. specification about the speed of the conductor or the speed of rotation of the contacts around the conductor. However, if the speed is slow enough to allow the operation of a recording relay it appears that a recording voltmeter could also be operated. In any event it is obvious that the device

would be operated no faster than the maximum speed at which a reliable record can be obtained and this would apply equally to any type of recording instrument. In claims 5, 8, 10, 12, and 27 the applicant has added limitations as to the speed of operation. Claims 10, 12, and 27 are the most specific and state that the circumferential movement is slower than the longitudinal movement. This language merely means that the pitch of the spiral path is greater than the circumference of the tubular tested and is obviously not a patentable limitation since it is nearly a matter of design to use any desired pitch. If a coarse spiral is traced on the conductor the chances of failing to note an eccentric portion are increased.

"In claim 12 an attempt has been made to claim the means for compensating for 'voltage other than the resistance drop in the sheath.' To accomplish this function applicant merely recites 'electrical connections between the contacts and the millivoltmeter arranged substantially in electrical symmetry.' This language is broad enough to read on a pair of leads of the same length and is unpatentable, especially since Braddon et al. shows a pair of twisted leads of substantially the same length. Claim 6 which has been amended to include additional means for this purpose is now considered allowable as indicated above."

Claim 18 was rejected by the examiner on the ground that its subject matter was unpatentable over Braddon et al. in view of the German patent. This claim emphasizes a plurality of pairs of contacts for engaging the conductor at circumferentially-spaced points and provides also that the movement is "solely in a direction longitudinally of the conductor." In rejecting this claim the examiner said:

"* * * One pair of the contacts illustrated by applicant is merely a duplication of the other pair in a different position on the circumference of the conductor and the limitation is unpatentable for this reason. In addition to this the German patent in Fig. 3 shows two pairs of contacts for the purpose of comparing the voltage between two spaced points on the circumference with the voltage between the other pair of contacts at a different position. In view of this disclosure no invention is seen in providing the Braddon et al. device with a plurality of pairs of contacts for the same purpose. With regard to the other

limitation, it is obvious that if the motor employed for rotating the contacts around the conductor is shut off the movement will be solely longitudinal of the conductor and while the fissure indication will not be obtained the eccentricity indicating means will still be operative the same as in applicant's device. The elimination of the rotational motion and its function is not inventive."

Claims 30 and 31 were first rejected upon the same ground as claims 26 and 27. These claims were later amended so as to call for a plurality of pairs of contacts to carry out the method, and the examiner regarded them as not patentable for the same reason as given in rejecting claim 18.

Claims 10 and 26 were rejected by the examiner upon the additional ground that they were completely met by the patent to Braddon et al. There is no recital in these claims of any recording means.

The Board of Appeals did not discuss all the claims in detail but answered appellant's contentions briefly and affirmed the examiner's rejection of the appealed claims for substantially the same reasons assigned by the examiner.

In this court, appellant has urged substantially the same objections to the examiner's conclusions as were pressed before the board, and we have considered very carefully the elaborate argument presented and have given especial consideration to the affidavit appearing in the record which was before the tribunals below. Appellant's contentions may be summed up in a general way by stating that they consist of urging that it was not obvious to substitute the Herrick voltmeter in the Braddon et al. apparatus so as to obtain a continuous indicating and recording means since there would necessarily have to be some modification of the Braddon et al. device insofar as that device was operated at too high a speed to allow the use of a continuous recording voltmeter.

We agree with the Patent Office tribunals that anyone skilled in the art who wanted to use a continuous measuring and recording voltmeter for indicating and recording eccentricity of conductors would necessarily know that he would have to reduce the speed of the Braddon et al. device. Nothing is stated in the Braddon et al. specification about the speed of the conductor or the speed of rotation of the contacts around the conductor. In fact some

of the claims at bar do not provide for any rotation around the conductor.

Appellant presses the point here that by having a continuous indicating and recording means which shows the exact thickness of the different parts of the conductor at all times, he has the advantage of knowing when the conductor, as it is being formed, is getting too thin or too thick and is enabled to promptly remedy the defect. The tribunals of the Patent Office concurred in the finding that this did not constitute an improvement over the Braddon et al. device. The tribunals, however, agreed that irrespective of its utility the use of such a recording meter was so common that no invention was seen in employing a meter of this type in any circuit where it was desired to make a permanent record of voltage, current or power. With the last conclusion we are in agreement.

Appellant presents considerable argument with respect to the fact that some of his claims, being method claims, and others being article claims, a rejection of his method claims upon article patents was not proper. We see no necessity for an extended answer to this contention. The inventions are closely related. No division was required or thought proper. The rejection of the claims for the reasons stated, we think, was not improper.

Appellant argues that the reason that the tribunals below arrived at the conclusion that what appellant did was obvious was because of the fact that they took into consideration what appellant in the instant application taught. He urges that if appellant's teachings are left out of consideration, it would not be obvious to the skilled mechanic, familiar with the prior art of record, to build appellant's structure or provide his method without the exercise of the inventive faculty. Certain decisions are cited in an attempt to support this contention. In connection with this line of argument, appellant insists that in the instant case, as in several of the cases cited, the inventive act consisted in discovering the difficulty which rendered the prior art devices unsatisfactory.

 It may be stated as a general proposition that invention may not rest alone in discovering a defect or the cause of a defect in prior art devices, but it may rest in discovering the cause of the defect and in remedying the same. It is established law that the difficulty encountered in discovering the defects of existing devices may be taken into consideration in determining the question of invention where the defect has been remedied. This is especially true where the cause of the defect is obscure and discovered only after it had long existed and after much research. The decisions have gone so far as to hold that where the defect of a prior art device had long existed and the cause of the defect was not discovered until after much experimentation, invention might be present, even though the remedy be simple or be suggested by the discovery of the defect or by the prior art. See Gillette Safety Razor Co. v. Hawley Hardware Co., D.C., 60 F.2d 1019, reversed on grounds which did not involve the foregoing principle in 2 Cir., 64 F.2d 10. See, also, Consolidated Window Glass Co. v. Window Glass Machine Co., 3 Cir., 261 F. 362.

It seems to us that neither the problem of discovering the difficulty nor the act of remedying it in the case at bar was so unobvious as to make the foregoing rule applicable. The difficulty with the prior art structures, if any existed, certainly were not unobvious to those skilled in the art. We think that the cited references, when considered by one skilled in the art, would readily suggest the remedy for the alleged defects without the necessity of such modifications as would involve invention.

The question as to what is or is not obvious in a patent sense is a question of opinion upon which those called upon to determine the question may differ. In re Pierce, 65 F.2d 271, 20 C.C.P.A., Patents, 1170, and cases cited. Such a situation may suggest the applicability of the well-known principle of resolving doubts in favor of applicants. In the instant case, up to this time, there has been no difference of opinion—no doubts have been expressed or indicated and we are not convinced that the holdings of the tribunals below in this respect were erroneous.

The decision of the Board of Appeals is affirmed.

Affirmed.