**TATKO BROTHERS SLATE CO., Inc.,**

v.

**Matthew HANNON.**

**Civ. A. No. 1836.**

United States District Court
D. Vermont.

Nov. 22, 1957.

Sennett & Sennett, Poultney, Vt., Maxwell E. Sparrow, New York City, J. Preston Swecker, Washington, D. C., for plaintiff.

J. Malcolm Williams, Poultney, Vt., John C. Blair, Stamford, Conn., for defendant.

GIBSON, District Judge.

### Statement of the Case

This is an action for patent infringement, arising under Title 35 U.S.C. § 281. Plaintiff's patent is No. 2,693,926. The complaint was filed on May 13, 1955. Following a stipulation for extension of time for filing the answer, on July 9, 1955, the defendant answered, denying infringement and denying the validity of the plaintiff's patent (No. 2,693,926). The defendant counterclaimed against the plaintiff for damages, on the theory of unfair competition. Defendant also sought a declaratory judgment and injunctive relief. On June 29, 1956, the defendant moved for a summary judgment, under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C. The defendant relied upon an allegation that the case involved no genuine issue of any material fact, and upon the decisions in the case of Vermont Structural Slate Co., Inc. v. Tatko Brothers Slate Co., Inc., as reported in D.C., 134 F.Supp. 4, and 2 Cir., 233 F.2d 9.

The motions for summary judgment and declaratory judgment came on for hearing at Brattleboro, Vermont, on July 16, 1956. Arguments of counsel were heard, briefs were filed, and exhibits were received by the Court. This Court, along with counsel for plaintiff and defendant, observed the transporting of slate stacked vertically upon the Tatko pallet with the use of a fork-lift truck at the Woodward Lumber Co. in Brattleboro, Vermont, and observed and compared the Tatko pallet with the Cruickshank pallet, Patent No. 2,297,347, and the Lilienfeld pallet, Patent No. 2,471,693. By an opinion filed on September 24, 1956, 147 F.Supp. 865, this Court denied the defendant's motion for summary judgment.

Trial of the cause was commenced on September 11, 1957, in Windsor, Vermont, before the Court. During the four-day trial, fifteen witnesses testified, seven depositions were introduced, and many exhibits were admitted.

### Findings of Fact

1. The plaintiff is a corporation duly organized under the laws of the State of New York, and has its principal place of business in Middle Granville, New York.

2. The defendant is a citizen and resident of Poultney, Vermont.

3. The plaintiff is and for over thirty years has been engaged in the business of quarrying slate and flagstone, and in the business of quarrying, processing, selling, and transporting slate products.

4. In the slate quarry industry, the handling of slate slabs or panels coming from the quarry or processing plant, the storing of the same and transporting the same, has always been a serious han-

dling problem. On account of the weight, differences in sizes and possibility of breakage, there was a long-standing need for a simplified, efficient and practical handling method which would reduce the expense of loading and unloading by hand.

5. Throughout the slate industry until about 1954, it was the general practice to handle all slate and flagstone by hand, piece by piece. Trucks were loaded by hand at the quarry, and for every successive move from the quarry to the processing plant, to the truck or train, to the wholesaler or jobber, to the contractor or retailer, to the ultimate job site, each piece had to be picked up by hand and placed in its next position. The cost of labor for these operations was detrimental to the slate industry.

6. Sometime following 1946, a few of the people who dealt with slate products commenced using flush-type pallets (Pl. Ex. 8) and fork-lift trucks for the handling of slate products. The stone was piled flat on these pallets, and it had a tendency to slide off. No over-the-highway transportation of slate was practical or commercially feasible with flush-type pallets. Flagstone and slate stones, when palletized, are of considerable weight, and the handling and transporting thereof on a pallet, unless the slate was securely held thereon, was dangerous. For many years slate had been shipped edgewise because this was the safest method of transportation, involving far less breakage. As the demand for palletized slate increased, the industry was confronted with the problem of stacking slate in an edgewise position on pallets.

7. In June of 1951, John Tatko conceived the idea of building a pallet with slots in each end which could be used for the purpose of standing up two or three pieces of slate or flagstone. These end pieces would then support rows of slate stacked on their edges, vertically. In June of 1951, John Tatko built his pallet and tested it. It proved to be very workable. Because of the scarcity of slate dealers who had fork-lift trucks,

and because he thought that the slate industry was not yet ready to palletize, John Tatko kept his invention a secret and did not start extensive use of it until January of 1954, at which time the use of fork-lift trucks in the building supply industry had become so prevalent that slate quarriers were receiving many requests for delivery of slate or flagstone on pallets.

8. On November 9, 1954, United States Letters Patent, No. 2,693,926, were duly and legally issued to the plaintiff as assignee of John Tatko, on the slot-type pallet. Tatko had filed for this patent on March 3, 1954.

9. The plaintiff has, since the date of issuance of said patent, been the owner of said letters patent.

10. The plaintiff, in the course of its business, has utilized, and still utilizes, the said invention as patented, and since the making of said invention by John Tatko, its president, the plaintiff has spent time, effort, and money in adapting its business to the use of the pallets.

11. The plaintiff has purchased over 12,000 Tatko-type pallets since 1954.

12. The invention provides a practical pallet for use in handling slate products safely, and the pallet construction devised by John Tatko has been in extensive commercial use by the plaintiff and has fulfilled a long-felt need in the trade. It enables the pallet to be efficiently and economically loaded with slate products at the quarry and lifted by a fork-lift truck onto a trailer truck or railway car for economic transport to the desired point of destination. This is made possible by reason of the provision of slots at the ends of the pallet, constructed to receive flat slabs of slate standing on edge therein to form end supports for the pallet. These serve to confine and wedge there between slabs of slate that are arranged on edge, side-by-side, on the pallet as a rigid unit. They prevent this unit from falling apart and individual slabs falling off the truck in transit. The essential difference between the Tatko pallet and previously

existing ones is the slots or pockets. The Tatko pallet made a very substantial contribution to the art of handling and transporting flagstone and other slate products.

13. Other handlers of slate, before the Tatko patent, had been attempting to solve the pallet problem. Various types were devised, but none of them proved completely satisfactory. They were either too weak, structurally, or too heavy, or too difficult to transport. None of these prior devices employed the slot-type innovation. One such attempt was made by Lawrence W. Morrison, an officer of Tomkins Brothers, Jamaica, Long Island, New York, who obtained 125 flush-type pallets (Pl. Exs. 24C and 24D). Some evidence was offered tending to show that these Morrison pallets were not entirely satisfactory for hauling flagstone over long distances by truck, and also evidence that Tomkins Brothers have since used the same type of pallet as in the Tatko patent (Pl. Exs. 20A–20D). Others attempted to solve the problem by attachment of fixed headboards to flush-type pallets (Def. Ex. N). One of the large manufacturers of pallets, Pallet Sales Corporation, proposed a fixed headboard on a flush-type pallet as late as 1953 (Pl. Exs. 26A and 26B). None of these went into extensive commercial use, although used to limited extent.

14. The plaintiff, with its two associated slate companies, does a gross business of over a million dollars a year. As a result of this invention, large savings have been made by the plaintiff and its customers. A professional time study showed that to load a trailer truck with fifteen tons of slate by hand (as was formerly done) required six man hours. The same load could be accomplished by one man, using a fork-lift truck and Tatko pallets, in five minutes and seven seconds. Assuming that only about 25% of his customers have fork-lift trucks, a slate quarrier doing a $750,000 annual business can save approximately $23,000 a year by using the Tatko pallet.

15. The invention of the Tatko pallet is of great value, importance, benefit and advantage to the plaintiff. Plaintiff has expended large sums of money in making the invention claimed in Letters Patent No. 2,693,926 profitable to it and useful to its customers. Devices made according to this Letters Patent have been introduced into extensive commercial use by the plaintiff, and because of these pallets, there has been created a great and increasing demand for plaintiff's slate products loaded on the said pallets.

16. This invention, as patented, was, and is, of great utility and value, and is novel despite its simplicity. For a considerable length of time, people skilled in the trade worked to devise an effective pallet for the purpose of easily and safely handling flagstone and slate, but this innovation escaped them. The difference between the previously existing pallets and the Tatko pallet was not obvious at the time of the invention to a person having ordinary skill in the slate industry. Since John Tatko's invention, the trade has generally acknowledged the usefullness and efficiency of said invention and the economies brought about by the use of such pallets. Its use has spread widely throughout the industry, from Vermont to Pennsylvania.

17. The defendant has cited several other patents relating to pallets. Among them are the Rickwood Patent No. 1,-944,845 (Ex. E), the Lilienfeld Patent No. 2,471,693 (Ex. H), the McMillan Patent No. 2,686,646 (Ex. H), and the Hansen Patent No. 2,738,058 (Ex. I). Defendant produced evidence attempting to establish prior knowledge and use of similar pallets by quarry operators. Without going into each item separately, I find that neither the patents, nor the publications, nor the evidence adduced at trial, disclose the use of slots or pockets in the ends of pallets intended for receiving pieces of flagstone or other slate, or any other parts of the lading itself for holding the lading stacked in place on the upper tier of the pallet.

The defendant failed to prove either that an invention similar to plaintiff's previously existed or that the innovation of this type of slot or pocket was obvious to a person having ordinary skill in the trade.

18. The defendant in this case has conceded infringement, in that he has, without authority, used the plaintiff's patented invention within the United States during the term of the patent.

## Conclusions of Law

1. This Court has jurisdiction of the parties to this action and of the subject matter. Title 28 U.S.C. § 1338.

2. Title 35 U.S.C. § 282 requires notice at least thirty days prior to the trial of patents and publications on which the party asserting the invalidity of the patent in suit intends to rely to show the state of the art. The same notice must also be given regarding any person who will be relied upon as the prior inventor or as having prior knowledge of or as having previously used the invention of the patent in suit.

The defendant failed to comply with this statute, and over the plaintiff's objection this Court received defendant's evidence in the form of Def's Ex. 1 and testimony from John Hadeka, Alexander Hoblock, John Burke, Edward S. Carpenter, Edward W. Goodhue, and Herman L. Fowle. This Court reserved its ruling on the admissibility of this evidence. The defendant then limited his offer of the evidence to a showing of the obviousness of innovation in plaintiff's patent. In light of the strict requirements of the statute and of the limitations as to proof of prior knowledge and use, the defendant adopted the theory that the evidence was offered not to show prior knowledge, use, or invention, but rather to show that the Tatko pallet was not obvious. That is precisely the same question stated in another way, and it is confronted with the same limitations of the statute and decisions, both as to notice and as to the character of proof required.

For failure to comply with Sec. 282, this Court holds that the above stated evidence must be excluded insofar as it tends to show the prior state of the art and prior knowledge of or use of pallets of the character and purpose of the Tatko patent. However, this evidence was considered by the Court, and even if it were admitted, it would fail to prove that the Tatko pallet patent is invalid. A patent shall be presumed valid, and the burden of establishing invalidity is on the party asserting it. Title 35 U.S.C. § 282. The defendant has failed in his burden of proof.

3. This Court concludes that the pallet set forth and defined in the claims of the Tatko patent, No. 2,693,926, was new and useful. Its invention called for more than was obvious to a person having ordinary skill in the slate industry. The device was a patentable invention within the meaning of Title 35 U.S.C. § 103, and said patent, No. 2,693,926, is good and valid.

4. This Court is, of course, aware of the fact that the United States Court of Appeals for the Second Circuit has once ruled that the Tatko patent here in issue is invalid for lack of invention. In this instant case, which involved different parties, not in privity with each other, this Court gave much weight to the former adjudication as reported in 233 F.2d 9. However, this Court became convinced that the issues of this case differed from those of the former case, and that the patentee must have his day in court. In the Vermont Structural Slate Co. case, 134 F.Supp. 4, no issue was raised by the patentee concerning the fact that the industry had tried to solve the problem of handling and transporting of slate products without success for many years. The United States District Court for the Northern District of New York ruled, on summary judgment, that invention was plainly lacking and that the pallet disclosed no more ingenuity than that of a man skilled in the art. The Court of Appeals affirmed the District Court, ruling that the differ-

ences between prior art and the Tatko patent claims were obvious to persons having ordinary skill in the trade.

In this instant case, the plaintiff, in answer to the defendant's motion for summary judgment, filed affidavits of nine persons in support of its contention that this case involves a genuine issue of material fact—it being an issue not raised in the former case. That issue was the obviousness of the innovation.

At the trial of this case, it became apparent to the Court that there were, indeed, genuine issues of fact. The evidence pertaining to the issue of validity of the patent was not the same as that presented to the United States District Court for the Northern District of New York in the earlier case. That the earlier adjudication was not binding upon this case was clearly shown by the ruling of the Second Circuit in the case of Gold Seal Importers v. Westerman-Rosenberg, Inc., 2 Cir., 133 F.2d 192.

5. What inventions are patentable is governed largely by Secs. 101, 102, and 103 of Title 35 U.S.C. Sec. 101 says that a new and useful process may be patented. The Tatko pallet meets this requirement. Sec. 102 says that a patent may not be obtained if the invention was known or used by others in this or a foreign country before the invention thereof by the applicant for patent, or if the invention was stated in a printed publication or in public use more than a year prior to the date of the patent application, or if the applicant has abandoned the invention, or if the invention was first patented in a foreign country, or if the invention was previously patented, or if the applicant wasn't the inventor, or if there was prior invention under certain conditions. None of these limitations apply to the Tatko patent here in litigation so as to render it invalid.

Sec. 103 says that a patent may not be obtained if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. This section forms the only real issue in this case. Sec. 103 was new in 1952. In interpreting its meaning and the underlying intent of Congress, this Court was aided considerably by the Commentary On The New Patent Act by P. J. Federico, Examiner-in-Chief, U. S. Patent Office. The commentary is found in Title 35 U.S.C.A., volume on Patents, Secs. 1 to 110 on pages 1 to 70. On Pages 22 and 23, Mr. Federico says:

"There has been some discussion as to whether Section 103 modifies the so-called standard of invention * * * in the courts and it may be correct to state that the printed record does not show an explicit positive command to the courts. While it is not believed that Congress intended any radical change in the level of invention or patentable novelty, nevertheless, it is believed that some modification was intended in the direction of moderating the extreme degrees of strictness exhibited by a number of judicial opinions over the past dozen or more years; that is, that some change of attitude more favorable to patents was hoped for. This is indicated by the language used in section 103 as well as by the general tenor of remarks of the Committees in the reports and particular comments * * *. The Committee Report, in the general part, states that the section 'should have a stabilizing effect and minimize great departures which have appeared in some cases'; the departures of which complaint has been made in the recent past are all departures in the direction of greater strictness and hence these would be what the report indicates should be minimized * * *.

"The last sentence of section 103 states that 'Patentability shall not be negatived by the manner in which the invention was made.' The Revision Note adds in explanation

that it is immaterial whether it resulted from long toil and experimentation or from a flash of genius. This sentence in the section further indicates the attitude of Congress in enacting the new patent act and should have a bearing on the interpretation of section 103 as a whole."

█ It seems to this Court that Sec. 103 of the new Patent Act of 1952 was intended to relax somewhat the former strictness of the test for patentability. However, the patent here in issue would survive the restriction of Sec. 103 in any event, because its difference from the prior art was not obvious to a person having ordinary skill in the art. Mere simplicity, when viewed after disclosure, does not negative invention or patentability. Application of Worrest, 201 F.2d 930, 40 C.C.P.A., Patents, 804; Patterson-Ballagh Corp. v. Moss, 9 Cir., 201 F.2d 403; In re Bisley, 197 F.2d 355, 39 C.C.P.A., Patents, 982; Application of Osplack, 195 F.2d 921, 39 C.C.P.A., Patents, 932; and In re Atkinson, 102 F.2d 882, 26 C.C.P.A., Patents, 1077. One criterion of invention is that others have sought and failed, even where the discovery is simple. Hanifen v. Armitage, C.C., 117 F. 845. Another criterion of invention is that the improvement, although it afterwards seems simple, overcomes difficulties and objections long endured, which others have made numerous efforts to overcome, without complete success, and that the patented article has gone into immediate use. Albright v. Langfeld, C.C., 131 F. 473. Regarding the question of obviousness, see Goodyear Tire & Rubber Co., Inc. v. Ray-O-Vac Co., 321 U.S. 275, 64 S.Ct. 593, 88 L.Ed. 721; Diamond Rubber Co. of New York v. Consolidated Rubber Tire Co., 220 U.S. 428, 31 S.Ct. 444, 55 L.Ed. 527, and Schering Corp. v. Gilbert, 2 Cir., 153 F.2d 428.

█ For a considerable period of time, men in the slate industry had tried to solve the problem of reducing the labor and increasing the safety of handling and transporting flagstone, all without complete success. This long-felt need, plus a showing of widespread acceptance of the Tatko pallet as the solution to the problem, is evidence of patentability. Freedman v. Overseas Scientific Corp., 2 Cir., 248 F.2d 274; Lyon v. Bausch & Lomb Optical Co., 2 Cir., 224 F.2d 530; Welsh Mfg. Co. v. Sunware Products Co., 2 Cir., 236 F.2d 225, and Landis Machine Co. v. Parker-Kalon Corp., 2 Cir., 190 F.2d 543.

█ 6. In the Tatko patent the only real innovation was the principle of slots for the reception of slate slabs to serve as end binders. To be sure, this invention was simple—but it was not obvious to persons possessing ordinary skill in the industry. One thing denying its obviousness is the fact that for several years many of the leaders in the trade tried to solve the problem and couldn't. The defendant's argument is like saying, as Justice Brewer commented: "but a wisdom born after the event is the cheapest of all wisdom. Anyone could have discovered America after 1492." U. S. v. American Bell Telephone Co., 167 U.S. 224, 261, 17 S.Ct. 809, 818, 42 L.Ed. 144. The fact that, viewed after the event, the means which the patentee adopted seem simple and such as *should* have been obvious to those skilled in the trade, is not enough to negative invention. Goodyear Tire & Rubber Co., Inc. v. Ray-O-Vac Co., 321 U.S. 275, 64 S.Ct. 593, 88 L.Ed. 721; Knaust Bros. v. Goldschlag, 2 Cir., 119 F.2d 1022.

█ 7. The Tatko pallet, Patent No. 2,693,926, is valid and has been infringed by the defendant, Matthew Hannon.

### Judgment Order

The defendant, his agents, servants and employees, are hereby enjoined from making, using or selling pallets in infringement of the Tatko patent, No. 2,-693,926.

The plaintiff is entitled to an accounting of the profits of the defendant in using the infringing pallets, to determine the damages resulting from the infringement. Said hearing on damages will be before this Court. Plaintiff is en-

titled to interest and costs, but because the case is not exceptional and the circumstances do not seem to warrant it, neither attorney fees nor treble damages will be allowed.

In view of this decision, the defendant's counterclaim is dismissed.