**TATKO BROS. SLATE CO., Inc.,**
**Plaintiff-Appellee,**

v.

**Matthew HANNON, Defendant-Appellant.**

**No. 142, Docket 25244.**

United States Court of Appeals
Second Circuit.

Argued Feb. 6, 1959.

Decided Sept. 11, 1959.

Madden, Judge, United States Court of Claims, dissented.

John C. Blair and Robert H. Ware, Stamford, Conn. (Blair, Spencer & Buckles, and Robert A. Cesari, Stamford, Conn., J. Malcolm Williams, Poultney, Vt., on the brief), for defendant-appellant.

J. Preston Swecker, Washington, D. C. (W. Brown Morton, Jr., and Maxwell E. Sparrow, New York City, William C. Sennett, Bennington, Vt., on the brief), for plaintiff-appellee.

Before CLARK, Chief Judge, MADDEN, Judge, United States Court of Claims,[*] and HINCKS, Circuit Judge.

HINCKS, Circuit Judge.

The patent in suit, Tatko Patent No. 2,693,926, is now before us for the second time. Upon the first occasion, a suit for a declaratory judgment was brought in the District Court for the Northern District of New York by the Vermont Structural Slate Company against Tatko Brothers Slate Company, holder of the patent (hereinafter "Tatko"). That suit resulted in a summary judgment in the plaintiff's favor, Judge Foley holding that no genuine issue of a material fact was presented. Vermont Structural Slate Co., Inc. v. Tatko Bros. Slate Co., Inc., D.C., 134 F.Supp. 4. We affirmed 233 F.2d 9, certiorari denied 352 U.S. 917, 77 S.Ct. 216, 1 L.Ed.2d 123.[1] Meanwhile, before the district court decision in that case had been made, Tatko brought this suit in the Vermont District Court, claiming infringement of the same patent. While this case was awaiting trial, our decision in the Vermont Structural Slate case was filed. After a four day trial, Judge Gibson concluded that the Tatko patent was valid and infringed; he granted judgment for the plaintiff and

[*] Sitting by designation pursuant to the provisions of 28 U.S.C. § 291(a).

1. The decision relating to the permanent injunction and final decree in this case is reported at D.C., 149 F.Supp. 139, affirmed 2 Cir., 253 F.2d 29.

dismissed the defendant's counterclaim. 157 F.Supp. 277.[2]  This appeal followed.

■  In the present case there was no privity between the defendant and the Vermont Structural Slate Company, the party who had challenged the validity of the Tatko patent in the Northern District of New York.  Consequently, Judge Gibson was right in ruling that our earlier decision in that case is not *res judicata* and may not be pleaded as a bar to this suit.  Triplett v. Lowell, 297 U.S. 638, 56 S.Ct. 645, 80 L.Ed. 949; Gold Seal Importers, Inc. v. Westerman-Rosenberg, Inc., 2 Cir., 133 F.2d 192.  Indeed, that ruling is not now questioned.

■  Accordingly, we turn at once to consider Judge Gibson's holding that the Tatko patent is valid.  In this task, the scope of review is clearly defined by the decided cases:  primary, or evidentiary, findings of fact may not be disturbed unless clearly erroneous; but the inferences and conclusions, based upon the primary facts, upon which depends the ultimate findings of patentability, as well as the standard of invention applied below, are questions of law fully reviewable in this court.  Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162; Blish, Mize & Silliman Hardware Co. v. Time Saver Tools, Inc., 10 Cir., 236 F.2d 913, certiorari denied 352 U.S. 1004, 77 S.Ct. 565, 1 L.Ed.2d 549.  We scrutinize the conclusion of patentability in this case with especial care, since four judges of this court heretofore, albeit acting upon a somewhat different record of fact, have agreed that the alleged invention is obvious and unpatentable.

■  The patent itself, issued on November 9, 1954 upon an application filed March 2, 1954, need only be briefly described since it has been fully set forth in earlier opinions, cited above.  The alleged invention is stated to relate to im-

provements in pallets in general and more particularly to the type employed for the handling of slate and flagstone.  It consists of a two-decked platform (in practice it is usually about four feet square) with the parallel platforms separated by the height of the transverse stringers.  The arrangement is such that loads may be stacked upon the upper of the two decks and the forks of a fork-lift truck may be inserted into the space between the decks (usually a space of about four inches).  Thus with the aid of a fork-lift truck the pallet and its entire load may be raised and moved, say, to a truck, railroad car, or a warehouse thus saving the necessity of loading and unloading the load-pieces by hand every time a load is moved.  But the gist of Tatko's alleged invention lay in slots or pockets along the two opposite sides, each between a pair of the stringers which spaced the two platforms from each other.  These slots were formed simply by terminating the upper platform on its opposite sides at the inside stringer of the terminal pair so that pieces of slate or flagstone could be inserted edgewise between the terminal stringers on both sides coming to rest upon the floor of the lower platform.  Thus the edgewise pieces of slate, etc., served as side walls between which the load, with its pieces also generally on edge, could be wedged in.

In the prior art, Lilienfeld, No. 2,471,-693 (1949),[3] had disclosed a pallet comprised of a pair of spaced platforms and the arrangement was such that the intervening space was suitable for the insertion of the forks of a fork-lift truck.  And to hold the load in place Lilienfeld had disclosed four hinged arms, two on each of the opposite sides, which could be raised to a position perpendicular to the surface to keep the load from sliding off at the sides.

We assume that in this case no prior art pallet was shown with terminal slots

2.  Prior to trial of the case in Vermont, the defendant's motion for a summary judgment had been denied.  147 F.Supp.

865.  This ruling is not assigned as error in the present appeal.

3.  This patent had been cited as a prior art patent in the appellant's answer.

which could be used for the insertion, by hand, of side walls. The central problem of the case may thus be framed: Did it involve patentable invention to substitute in a pallet for Lilienfeld's hand operated hinged side arms Tatko's slots for the manual insertion of slate side walls as a means to hold the load in place?

The affirmative answer to this question made below was based in turn upon another conclusion, viz., that the addition of Tatko's slots to the conventional two-tier pallet "called for more than was obvious to a person having ordinary skill in the slate industry." [4] And the latter conclusion was apparently based on a finding that "for a considerable length of time people skilled in the trade worked to devise an effective pallet for the purpose of easily and safely handling flagstone and slate, but this innovation [i. e., the *slotted* pallet] escaped them." But this finding, we think, was an insufficient basis for a conclusion as to what was *obvious* in the industry. For the patentee himself testified, as the court below found, that he conceived the slotted pallet in June 1951; and that he concealed his invention until January 1954; because until that time the building supply industry was insufficiently supplied with fork-lift trucks [upon which the utility of pallets largely depended] to make it desirable to palletize the industry and until then "the demand for palletized slate * * * was very limited." But of course when the demand for palletized slate was "very limited," one could not expect an effort by the industry generally to develop improved pallets. Thus the fact that the slotted pallet "escaped" the attention of the industry signifies only that that notion was impractical because the consuming public was not equipped with fork-lift trucks—not that the slotted pallet was more than an obvious solution once the public was sufficiently equipped with such trucks. And the fact that an occasional individual in the pre-palletized industry may have sought to improve pallets for

the handling of slate without hitting on the notion of the slotted pallet no more demonstrates that the notion was non-obvious than Mr. Tatko's achievement demonstrates that the notion was obvious. Thus Tatko's testimony leaves no room for a contention that his "invention" was one to fill a long-felt want which others had long and unsuccessfully sought to fill: the want was not felt until the prevalence of the fork-lift trucks and then was promptly filled. Welsh Manufacturing Co. v. Sunware Products Co., 2 Cir., 236 F.2d 225. In view of this testimony, our holdings in cases such as Lyon v. Bausch & Lomb Optical Co., 2 Cir., 224 F.2d 530, are inapplicable.

We think the mere exhibition of Tatko's patent, with its simple arrangement of planks and stringers, was evidence enough that the disclosure was not one beyond the skill of an ordinary mechanic in the art. Certainly it required nothing beyond the visual observation of slate joggling off flush pallets to appreciate the desirability of some side-wall device to hold the intervening load in place. Whether provision for such side walls should be made by hinged uprights, as in Lilienfeld, or by uprights nailed or otherwise permanently fixed to the stringers, or by removable stakes such as those long and commonly observed for insertion in the slots or sockets in the platforms of open body trucks, or by slots in the upper platform for the receipt of upright pieces of slate, as Tatko suggested, was a mere matter of choice between simple devices in common use in well-nigh every art and trade. To make such a simple choice and to embody it in the pallet, called for no skill beyond that of an ordinary mechanic in the slate-pallet art. We think it altogether plain that the patent in suit was lacking in patentable invention. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., supra; Jungersen v. Ostby & Barton Co., 335 U.S. 560, 69 S.Ct. 269, 93 L.Ed. 235; Bostitch, Inc. v. Precision Staple Corp.,

4. Quotation from Conclusion of Law No. 3. The Tatko patent specifies that its invention "relates to improvements in pallets in general and more particularly to the type employed in the slate products industry."

2 Cir., 178 F.2d 332; Zoomar, Inc. v. Paillard Products, 2 Cir., 258 F.2d 527, certiorari denied 358 U.S. 908, 79 S.Ct. 237, 3 L.Ed.2d 230.

For these reasons, the plaintiff's complaint must be dismissed and the defendant's counterclaim granted.

Reversed.

MADDEN, Judge (dissenting).

The Court rightly concludes, as did Judge Gibson in the District Court, that the prior decision involving this same patent, and holding it invalid, Vermont Structural Slate Co. v. Tatko Bros. Slate Co., D.C., 134 F.Supp. 4, affirmed by this Court, 233 F.2d 9, is not a bar to the plaintiff's suit. The instant case being, then, open for normal appellate treatment, has not, I think, received such treatment at the hands of the Court. A crucial finding of fact of the District Judge has, it seems to me, been, without justification, discarded.

Judge Gibson found, as the Court recites, that "for a considerable length of time, people skilled in the trade worked to devise an effective pallet for the purpose of easily and safely handling flagstone and slate, but this innovation [i. e. the *slotted* pallet] escaped them." [157 F.Supp. 280.] The Court says that this does not prove that the innovation was not *obvious* in the industry because, at the time, not many enterprises in the building supply industry were equipped with fork-lift trucks, and therefore there was not much call for double-floored pallets. But Judge Gibson found that there were several enterprises of considerable size which faced the problem, attempted in various ways to solve it, did not find a satisfactory solution, and immediately copied the plaintiff's solution when it became public.

The philosophy of the instant decision, as I see it, is the same as that of the District Court and this Court in the Vermont Structural Slate Co. case, supra, i. e. that the plaintiff's device is so simple and obvious that it does not rise to the dignity of an invention. Some of the language of

Judge Foley in the Vermont Structural Slate Co. case is revealing as to why he reached that conclusion. He wrote, 134 F.Supp. at page 5.

"The patent involved in this motion and lawsuit is one of unbelievable simplicity. This statement finds the most support in the fact that I was able to comprehend with some ease the nature, purpose and function of its design from a reading of the patent, the descriptions in the pleadings and affidavits, an inspection of the photographs and a view of the physical exhibits that were demonstrated by the defendant upon the argument of the motion. * * "

And in this Court, the late Judge Jerome Frank wrote that invention was plainly lacking, the question of invention "was not at all close" and "The patent disclosed no more ingenuity than that of a man skilled in the art." [233 F.2d 11.]

For the judges, after the plaintiff's device had been disclosed, and had been quite universally adopted in the industry, it was obvious that that was the way to solve the difficulty. Why then did the people in the industry submit, even though only a few of them directly faced the problem, and even though only a few years elapsed before the plaintiff's solution was disclosed and immediately adopted, to the bedevilment of having their loads slip off the pallets and be scattered on the highway, to having their cumbersome sideboards use up unnecessary space in returning the pallets to the quarries, to having their loose stakes get broken and lost?

The case seems to me to be getting itself decided, not on the basis provided by precedent and recent statute, of obviousness to those in the industry, but of obviousness to the judges after the patent has disclosed the device and the industry has adopted it. This seems to me to be a failure by the Court to adjust itself to the purpose and spirit, the "mood," see Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 487, 71 S.Ct. 456, 95 L.Ed. 456, of

Section 103 of Title 35 United States Code, enacted in 1952.

The patent here in question was not a great patent. It required no Franklin, Faraday, Edison, or Marconi to conceive it. But the device was highly useful, it was admittedly new, and on its modest level, it was, I venture to say for myself, ingenious. I think it was worthy of a valid patent, which the courts should protect.